O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE P. LADEN and RICHARD M. LADEN,<br><br>           Plaintiffs,<br><br>     v.<br><br>U.S. BANK NATIONAL ASSOCIATION as Trustee for HARBORVIEW 2005-16 TRUST FUND and DOES 1–20, inclusive,<br><br>           Defendants. | Case No. 2:12-cv-00173-ODW(CWx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [43]** |

## I.   INTRODUCTION

Plaintiffs Candace and Richard Laden seek relief against Defendant U.S. Bank under a single statute: California Civil Code section 2923.5.  The Ladens contend that U.S. Bank failed under this statute to contact them to assess their financial situation and explore foreclosure-avoidance options before filing a notice of default.  But at a recent order-to-show-cause hearing, the Court observed that there no longer appeared to be a live case or controversy in this matter, as U.S. Bank has now made the required contact and even offered the Ladens two loan modifications.  This is all that is required under section 2923.5.

/ / /

/ / /

At the Court's direction, U.S. Bank has moved for summary judgment. (ECF No. 43.) The Ladens failed to oppose U.S. Bank's motion, which the Court now **GRANTS**.[1]

## II. UNDISPUTED FACTS

On October 3, 2005, the Ladens obtained a $900,000.00 home loan secured by a Deed of Trust encumbering their home. (UF 1.) Bank of America serviced the loan on behalf of U.S. Bank, the trustee of the Harborview 2005-16 securitized trust holding beneficial interest in the Ladens' loan. (*See* UF 3.)

The Ladens initially defaulted on their mortgage payments in April 2008. (UF 6.) While they resumed making payments in August 2008, they defaulted again in December 2008 and stopped making payments altogether in May 2009. (UF 6, 7.) As a result, Bank of America sent the Ladens notices of intent to accelerate the balance due on the loan on July 21, 2009; March 25, 2010; and on January 7, 2011. (UF 8, 10, 12.) Each of these notices identified the Ladens' missed monthly payments and resulting late charges, documented foreclosure alternatives, and included the toll-free numbers for both Bank of America's Loan Counseling Center and the Housing and Urban Development ("HUD") counseling agency. (UF 9–10, 12.)

Between March 10, 2010, and April 14, 2011, Bank of America also contacted or attempted to contact the Ladens by telephone multiple times to assess their financial situation and explore options to avoid foreclosure. (UF 11, 14–16.) On three occasions (on January 31, April 12, and April 14, 2011), Bank of America representatives spoke with at least one of the Ladens to discuss their financial situation, explore options to avoid foreclosure, and provide them with HUD's toll-free number. (UF 11, 14–16.) Representatives also left messages for the Ladens on April 17, 2010, at 11:58 a.m.; April 27, 2010, at 7:33 p.m.; July 8, 2010, at 8:41 p.m.; and September 30, 2011, at 7:48 p.m. (UF 11.)

---

[1] Given the relative simplicity of this matter, the Court's March 2013 OSC hearing, and the Ladens' failure to oppose U.S. Bank's motion, Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L. R. 7-15.

On August 16, 2011, ReconTrust recorded a Notice of Default on Bank of America's behalf. (UF 20.) The Notice of Default contained a declaration of compliance with section 2923.5, in which Bank of America employee Tanya Jackson testified under penalty of perjury that Bank of America had "tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5." (UF 19.)

On November 22, 2011, ReconTrust recorded a Notice of Trustee's Sale. (UF 21.) No foreclosure sale has taken place to date. (UF 22.)

After the Ladens filed this lawsuit in December 2011,[2] Bank of America approved them for a loan modification on December 27, 2012; the Ladens rejected the modification. (UF 23). Then on February 7, 2013, Bank of America approved the Ladens for a *second* loan modification, which they also rejected. (UF 24.) The Ladens remain $223,552.24 in arrears on their mortgage loan. (UF 25.)

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c).

### IV. DISCUSSION

Under California Civil Code section 2923.5, a mortgagee, beneficiary, or authorized agent ("lender") must contact—or exercise due diligence in attempting to contact—a borrower in person or by telephone at least 30 days before filing a notice of default "in order to assess the borrower's financial situation and explore options for

---

[2] The Ladens filed in California Superior Court on December 9, 2011; U.S. Bank removed this action to this Court on January 6, 2012, on the basis of diversity jurisdiction under 28 U.S.C. § 1332.

the borrower to avoid foreclosure." Cal. Civ. Code § 2923.5(a). A leading California Court of Appeal case construing section 2923.5 has explained that the lender's assessment of the borrower's finances "must necessarily be simple—something on the order of, 'why can't you make your payments?'" *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 232 (2010). The same is true of the lender's duty to explore options available to the borrower to avoid foreclosure. *See id.* And importantly, the *only* remedy for violation of section 2923.5 where a foreclosure sale has not occurred (as here) "is a postponement of the sale before it happens." *Id.* at 235.

U.S. Bank has submitted more than enough evidence to establish its compliance with both the letter and the spirit of section 2923.5. Prior to recording the Notice of Default, U.S. Bank (through its agent, Bank of America) sent the Ladens three notices of intent to accelerate, all of which documented foreclosure alternatives and provided toll-free loan-counseling numbers. Bank of America representatives also left at least three messages for the Ladens at different times of day and had at least three actual telephone conversations with one or both of them—all more than 30 days before filing and recording the Notice of Default. (*See* UF 11, 14–16.)

If this were somehow not enough, U.S. Bank has stayed the foreclosure sale pending the result of this action—the only remedy available to the Ladens under section 2923.5. Further, since the Ladens filed suit they have been offered *two* loan modifications, and they've rejected both. The Ladens have therefore suffered no prejudice as a result of any conceivable flaw in U.S. Bank's efforts under section 2923.5.

At the March 19, 2013 hearing on the Court's order to show cause regarding settlement, the Court inquired what the Ladens sought to accomplish by this litigation. Mr. Laden responded that he hoped this litigation would buy "further time which may yield further positive results, [a loan-modification offer] that we feel would be reasonable and acceptable to work something out." (OSC Hr'g Tr. 17:16–19, Mar. 19, 2013.) But section 2923.5 does not "require the lender to consider a whole new loan

application" at all. *Mabry*, 185 Cal. App. 4th at 232. And still, U.S. Bank (through Bank of America) has gone as far as to offer the Ladens *two* rejected loan modifications, all the while staying a lawful foreclosure sale. U.S. Bank has complied with section 2923.5 and then some. As a result, no genuine issue of material fact remains, and U.S. Bank is entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons discussed above, U.S. Bank's Motion for Summary Judgment is **GRANTED**. A judgment will issue.

**IT IS SO ORDERED.**

April 23, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**